**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

COLUMBIA CASUALTY COMPANY,
         Plaintiff,

    v.                                          C.A. No. 15-197-ML

IRONSHORE SPECIALTY INSURANCE COMPANY,
         Defendant.

**MEMORANDUM AND ORDER**

Columbia Casualty Company ("Columbia"), the plaintiff in this declaratory judgment action related to insurance coverage, has filed an objection to the Report and Recommendation (the "R&R") issued by Magistrate Judge Almond (Dkt. No. 22), in which he recommends that this Court grant, in part, and deny, in part, Columbia's motion to dismiss (Dkt. No. 16) four counterclaims (Dkt. No. 14) brought against it by defendant Ironshore Specialty Insurance Company ("Ironshore").

**I.    Factual Background and Procedural Posture**

The relevant facts leading to Columbia's declaratory judgment action and Ironshore's corresponding counterclaims are set forth in detail in the R&R. Pursuant to the standard of review for motions to dismiss under Rule 12(b)(6) of the Federal Rules of Procedure, the facts are based on the assertions made in Ironshore's counterclaims.

In June 2012, a medical malpractice action was filed against Rhode Island Hospital ("RIH") by Mr. and Mrs. Beauchamp after Mr. Beauchamp suffered a severe and permanent brain injury (the

1

"Beauchamp Action"). At that time, RIH, as a member of the Lifespan network of non-profit hospitals, was the named insured under three insurance policies totaling $32 million in coverage. The first $6 million was self-insured by Lifespan; Columbia provided the first excess layer of up to $15 million; and Ironshore provided a second excess layer of up to $11 million. Demand in the Beauchamp Action was for the full policy limits of $32 million.

There were some unsuccessful attempts at settling the case and, at some point, Columbia directed defense counsel to concede liability and causation, leaving only a determination of damages for trial. Although RIH's defense counsel advised that the case could be settled for approximately $15 million, Columbia refused to authorize more than $500,000 of its $15 million limit. After the damage estimate (including prejudgment interest) was raised to between $19.1 million and $27.9 million, Columbia declined to offer more than $1.25 million.

According to Ironshore's counterclaims, it repeatedly demanded in writing that Columbia satisfy its duty of good faith by settling the Beauchamp Action within its policy limits, but Columbia refused and the case proceeded to trial. On the second day of trial, Columbia offered to settle the case for a total of $15 million (including the self-insured layer and approximately $9.5 million of the Columbia policy, which would have resulted in a potential $5.5 million savings to Columbia). Columbia also requested that

Ironshore "drop down" to make a payment towards settlement that would otherwise be part of Columbia's policy coverage. Ironshore further alleges that, rather than seeking to negotiate a full settlement with the Beauchamps that would avoid a jury verdict against RIH, Columbia pursued a "high-low" agreement with the plaintiffs that guaranteed a minimum recovery of $15 million and a maximum recovery of $31.5 million (potentially resulting in a $6 million savings to Columbia). According to Ironshore, it continued its own efforts to pursue a $25 million settlement with the Beauchamps, but Columbia refused to contribute its $15 million policy limit, notwithstanding Ironshore's expressed concerns that a higher jury verdict would create bad publicity for RIH and would unnecessarily exhaust Ironshore's entire liability limits for that account year.

Eventually, the case proceeded to a verdict and the jury awarded the Beauchamps $25.59 million plus prejudgment interest, exceeding the $31.5 million maximum under the "high-low" agreement. At that time, Lifespan's $6 million self-insured coverage had been eroded by defense costs, and payment of the verdict exhausted Ironshore's second excess policy for the account year. Columbia was liable for $15,022,423 and Ironshore was liable for $11,011,044 of the $31.5 million due to the Beauchamps.

According to Columbia's complaint, Columbia commenced this declaratory judgment action after Ironshore demanded reimbursement

of the $11 million Ironshore had paid toward the judgment, on the basis of breach of fiduciary duty. Specifically, Columbia sought a declaration that it had no obligation to pay Ironshore's share of the "high-low" settlement. Ironshore responded with counterclaims against Columbia, asserting (Count I) common law bad faith, (Count II) bad faith under R.I. Gen. Laws §9-1-33, (Count III) breach of fiduciary obligation, and (Count IV) breach of duty of good faith and fair dealing owed to Ironshore.

In the R&R, Magistrate Judge Almond recommended that Columbia's motion to dismiss Ironshore's counterclaims be granted as to Counts III and IV and that those claims be dismissed; neither party has raised an objection to that recommendation. With respect to Counts I and II, the R&R recommended that this Court deny Columbia's motion, to which recommendation Columbia has raised an objection (Dkt. No. 25). Specifically, the Magistrate Judge rejected Columbia's contentions that (1) the "high-low" settlement barred all bad faith claims; (2) Ironshore's statutory bad-faith claim supplanted its common law bad-faith claim, and (3) Ironshore lacked standing to bring a statutory bad faith claim because it was not Columbia's "insured." On its part, Ironshore filed a response to Columbia's objection (Dkt. No. 27), to which Columbia filed a further reply (Dkt. No. 29).

## II.  Standard of Review

In considering objections to a Magistrate Judge's

determination of a dispositive pretrial motion, the Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.  Because a grant of Columbia's Rule 12(b)(6) motion would extinguish Ironshore's counterclaims, it qualifies as a dispositive motion.

The dismissal of a complaint for failure to state a claim is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. Courts apply the same standard to motions to dismiss a counterclaim pursuant to Fed. R. Civ. P.  12(b)(6) as they do when reviewing motions to dismiss a complaint. Clark Capital Management v. Navigator Investments, LLC, 2014 WL 6977601, at *1 (D.R.I. Dec. 9, 2014)(citing Lexington Luminance LLC v. Osram Sylvania Inc., 972 F.Supp.2d 88 (D.Mass. 2013)). A dismissal is indicated "if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Lemelson v. U.S. Bank Nat. Ass'n, 721 F.3d 18, 21 (1st Cir. 2013)(citations omitted). In determining whether a motion to dismiss should be granted, the Court considers whether, "construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be

granted." <u>Ocasio-Hernandez v. Fortuno-Burset</u>, 640 F.3d 1, 8 (1st Cir.2011).

### III. Discussion

A.   Common Law Bad Faith Claim

It is well established Rhode Island law that "an insurer has a fiduciary obligation 'to act in the best interests of its insured in order to protect the insured from excess liability' and to refrain from conduct that demonstrates 'greater concern for the insurer's monetary interest than the financial risk attendant to the insured's situation.'" <u>Skaling v. Aetna Ins. Co.</u>, 799 A.2d 997, 1005 (R.I. 2002) (quoting <u>Asermely v. Allstate Insurance Co.</u>, 728 A.2d 461 (R.I.1999))(internal citation omitted). The Rhode Island Supreme Court has made it "abundantly clear that the duty of good faith and fair dealing includes an affirmative duty to engage in timely and meaningful settlement negotiations and to make and consider offers of settlement consistent with an insurer's fiduciary duty to protect its insured from excess liability." <u>Skaling v. Aetna Ins. Co.</u>, 799 A.2d at 1005.

In its remaining bad-faith counterclaims[1], Ironshore alleges that Columbia's continuing refusal to settle the Beauchamp Action within Columbia's policy limits constituted a breach of its duty of

---

[1] The detailed allegations made in Ironshore's counterclaims are incorporated, by reference, into all four counts of those claims.

good faith and fair dealing to its insured. Answer and Counterclaim at 15-18 (Dkt. No. 14). Ironshore also alleges that, as a result of Columbia's bad-faith conduct, RIH was exposed to a jury judgment well in excess of Columbia's policy limit and that it was subjected to negative publicity against the hospital. Based on the subrogation provision in the policy issued by Ironshore to RIH and in light of the $11 million payment Ironshore made under the "high-low" settlement, Ironshore seeks reimbursement as "the contractual and equitable subrogee" of Lifespan and RIH. Id. at 18.

In its motion to dismiss Ironshore's counterclaims, Columbia asserts that Ironshore is precluded from bringing claims "premised on bad-faith failure to settle in a case that Columbia actually settled before verdict with Ironshore's express written consent." Columbia also points out that both Ironshore and Lifespan agreed to and executed the settlement agreement. Columbia Mem. at 3 (Dkt. No. 16-1).

That assertion, however, fails to address the basis of Ironshore's claims. The settlement executed by the parties did not result in a settlement of the underlying litigation; it merely set upper and lower limits to damages determined by a potential jury verdict. The gravamen of Ironshore's bad-faith claims is that, by refusing to settle the underlying claim up to its $15 million policy limits, Columbia risked negative consequences to RIH from a potential high jury verdict, as well as the complete exhaustion of

7

RIH's remaining coverage under Ironshore's third tier excess insurance for the account year. While a complete settlement of the underlying case might have foreclosed any claims Ironshore is now asserting against Columbia, the existence of the "high-low" agreement, by itself, does not preclude Ironshore's counterclaims, and Columbia provides no Rhode Island precedent or persuasive authority for such a conclusion.

Columbia further asserts that "Rhode Island's statutory codification of bad faith insurance practice pursuant to R.I. Gen. Laws §9-1-33 has supplanted any common law bad faith claims." It is correct, as Columbia points out, that the Rhode Island legislature enacted §9-1-33 subsequent to the Rhode Island Supreme Court's advisory opinion in Bibeault v. Hanover Ins. Co., 417 A.2d 313, (R.I. 1980)(recognizing the common law tort of insurer bad faith). Section 9-1-33 "codified this cause of action... [and] provided that 'the question of whether or not an insurer has acted in bad faith in refusing to settle a claim shall be a question to be determined by the trier of fact.'" Skaling v. Aetna Ins. Co., 799 A.2d at 1004. However, the impact of such codification on the availability of bad-faith claims against insurers under common law is less than clear.

In supporting its contention that Ironshore's common law bad-faith claim must be dismissed, Columbia relies on Borden v. Paul Revere Life Ins. Co., 935 F.2d 370 (1st Cir. 1991), in which the

8

First Circuit Court of Appeals concluded that the statutory cause of action under §9-1-33 has supplanted the common law action of insurer bad faith. However, <u>Borden's</u> holding has not been confirmed, and is called into doubt, by subsequent holdings of the Rhode Island Supreme Court, which appear to indicate that common law bad-faith claims remain viable. <u>See e.g.</u> <u>Zarrella v. Minnesota Mut. Life Ins. Co.</u>, 824 A.2d 1249, 1261 (R.I. 2003)(setting forth standard for common law bad-faith claim in Rhode Island); <u>see also Robertson Stephens, Inc. v. Chubb Corp</u>, 473 F. Supp.2d 265, 272 (D.R.I. 2007) (noting that, although "the relationship between statutory and common law bad faith is not well defined,...at the very least these subsequent cases connote the latter's continued vitality.") Accordingly, the existence of statutory remedies under §9-1-33 does not necessarily preclude Ironshore from raising a bad-faith claim against Columbia under common law.

Finally, Columbia argues that Ironshore has no standing to bring a statutory bad-faith claim under R.I. Gen. Laws §9-1-33. In its counterclaims, Ironshore has referred to the subrogation provision in the policy it issued to RIH, its "assignor", which entitles Ironshore to subrogation to all the insured's recovery rights. Ironshore also asserts that it is equitably subrogated to to RIH's and/or Lifespan's rights of recovery by virtue of the $11 million payment Ironshore made under the "high-low" agreement. In addition, Ironshore has supported its contention that it is an

assignee to Lifespan and RIH by submitting a written assignment (Dkt. No. 20-3) as an exhibit to its objection to Columbia's motion to dismiss. The Rhode Island Supreme Court has indicated that an insurer's "fiduciary obligation extends not only to the insurance company's own insured, but also ... to a party to whom the insureds have assigned their rights." <u>Asermely v. Allstate Ins. Co.</u>, 728 A.2d at 464. Under those circumstances, the Court finds that Ironshore's allegations are sufficient to assert standing for a statutory bad-faith claim against Columbia.

Construing the allegations pleaded in the counterclaims in the light most favorable to Ironshore and accepting them as true, the Court is of the opinion that the facts asserted by Ironshore in its counterclaims are sufficient to withstand Columbia's Rule 12(b)(6) motion. For those reasons and for the reasons set forth in the R&R, the R&R is adopted in its entirety and Columbia's motion to dismiss Counts I and II of Ironshore's counterclaims is DENIED.[2]

SO ORDERED.

<u>/s/ Mary M. Lisi</u>

Senior United States District Judge
May 19, 2016

---

[2] Counts III and IV of Ironshore's counterclaims are DISMISSED.