UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
COLUMBIA CASUALTY COMPANY,         )
                                   )
    Plaintiff,                     )
                                   )
        v.                         )   C.A. No. 15-197 WES
                                   )
IRONSHORE SPECIALTY INSURANCE      )
COMPANY,                           )
                                   )
    Defendant.                     )
_____)

**MEMORANDUM OF DECISION**

WILLIAM E. SMITH, Chief Judge.

Before the Court is Plaintiff Columbia Casualty Insurance's ("Columbia") Motion for Summary Judgment (ECF No. 55) and Defendant Ironshore Specialty Insurance Company's ("Ironshore") Motion to Preclude Expert Report of Judge Mark A. Pfeiffer (ECF No. 61). At the April 1, 2019, hearing on these motions, the Court denied Columbia's Motion and granted Ironshore's Motion; the Court's reasoning is set forth below.

I.  Factual Background

This case arises out of a $25.6 million jury verdict awarded on April 29, 2015, in favor of Carl Beauchamp ("Beauchamp"), who suffered severe and permanent brain damage as a result of Rhode

Island Hospital's ("RIH")[1] negligence. At the time, this was the largest negligence verdict in Rhode Island's history. See Pl.'s Answer & Countercl. ("Pl.'s Answer") 5, ECF No. 14. The case was tried in Providence County Superior Court. Id.; Pl.'s Mem. in Supp. of Summ. J. ("Pl.'s Mem.") 5, ECF No. 55-1. Lifespan admitted to liability and causation early on and, therefore, the only issue at trial was damages. Id. at 3. After two years of unsuccessful settlement negotiations, the parties entered into a "high-low agreement" on the eve of trial, wherein the "low" was set at $15 million and the "high" was set at $31.5 million, inclusive of prejudgment interest. See Pl.'s Statement of Undisputed Facts ("CSUF"), Ex. 40 ("High-Low Agreement"), ECF No. 56-40. Because the $25.6 million verdict came to approximately $35 million when prejudgment interest was included, it triggered the "high" end of the agreement. CSUF ¶ 125.

RIH maintained three layers of insurance: Lifespan provided the first $6 million of coverage as its self-insured retention policy; Columbia provided the next layer of coverage with a $15 million policy limit (i.e., Columbia was responsible for liability between $6 and $21 million); and Ironshore provided the second excess layer of coverage with a $11 million policy limit (i.e., Ironshore was responsible for liability between $21 and $32

---

[1] RIH is a member of the Lifespan network of non-profit hospitals and so references to "Lifespan," "RIH," and "the insured" are used interchangeably.

million); Lifespan remained uninsured and therefore responsible for any liability in excess of $32 million. Id. ¶ 4. As RIH's total coverage was $32 million, the Beauchamp verdict, subject to the High-Low Agreement, completely exhausted its policy limits for the year 2015. See Mem. & Order 7-8, ECF No. 32 (noting that "[t]he gravamen of Ironshore's" allegation was that the "high jury verdict" resulted in the "complete exhaustion of RIH's remaining coverage under Ironshore's third tier excess insurance for the account year").

On May 7, 2015, Ironshore wrote a letter to Columbia demanding that it reimburse the $11 million Ironshore paid pursuant to the High-Low Agreement.[2] It argued that Columbia could have settled the case within its policy limits of $21 million and that its failure to do so was in bad faith. On May 8, 2015, Columbia filed the instant Complaint seeking a declaratory judgment that it "fulfilled its payment obligation by paying its limit of liability, that [Ironshore] is obligated to pay that portion of the settlement that exceeds underlying coverage, and that [Ironshore] has no right to recovery from the Plaintiff for such amounts owed[.]" Compl. ¶ 15(B), ECF No. 1. Ironshore filed an Answer and a four-count Counterclaim, of which only Counts 1 (common-law bad faith) and

---

[2] Ironshore sent this letter in its capacity as the contractual and equitable subrogee of RIH's rights. See Def.'s Opp'n to Mot. Summ. J. ("Def.'s Opp'n") 43, ECF No. 67.

Count 2 (bad faith under R.I. Gen. Laws § 9-1-33) survive.[3] See Pl.'s Answer.

The crux of the dispute here is whether Columbia's settlement tactics in the Beauchamp action were reasonable and legitimate efforts to reduce Lifespan's exposure to damages, or were executed in bad faith and in reckless disregard of Lifespan's best interests. Ironshore argues that Columbia had several opportunities prior to trial to settle the Beauchamp case within its (Columbia's) policy limits of $21 million — or during trial for $25 million — but that Columbia consistently and unreasonably low-balled Beauchamp. Ironshore's thesis is that Columbia stood to gain from the high-low arrangement because it could take a chance on giving the case to the jury and possibly hit the low end of the High-Low Agreement, without putting more of its own money at risk — that is, Columbia could "gamble with the policyholder's money, for its own benefit, even when it would not take the same gamble with its own money." Def.'s Mem. in Opp'n to Summ. J. ("Def.'s Opp'n") 27 n.154, ECF No. 68 (quoting William T. Barker & Ronald D. Kent, 3 New Appleman on Insurance Law § 23.02[1] (Library ed. 2018). According to Ironshore, Columbia's decision to allow the Beauchamp case to go to

---

[3] Judge Mary Lisi granted Columbia's Motion to Dismiss (ECF No. 16) as to Counts 3 and 4 (breach of fiduciary obligation to Lifespan and RIH, and breach of the covenant of good faith and fair dealing to Ironshore, respectively) on May 19, 2016. See Mem. and Order (adopting Magistrate Judge Almond's Report and Recommendation ("R. & R."), ECF No. 22, in its entirety).

4

verdict, rather than make an offer of $21 or $25 million, caused Lifespan reputational harm from all the negative publicity and prevented Lifespan from obtaining excess insurance coverage for the policy year following the verdict. Id. at 45-46; Def.'s Statement of Undisputed Facts ("Def.'s SUF") Ex. 29 at 7, ECF No. 69-29. Columbia maintains that it engaged in earnest settlement negotiations with Beauchamp's attorney and that, other than one demand in July 2014 for $32 million – which Columbia maintains was patently unreasonable – Beauchamp's attorney never made any formal settlement demands to which Columbia could respond. See generally Pl.'s Mem. As a result, Columbia says it was effectively negotiating against itself throughout the settlement process, not acting in bad faith.

II. Legal Standard

"Rule 56(a) of the Federal Rules of Civil Procedure directs courts to 'grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Beacon Mut. Ins. Co. v. St. Paul Mercury Ins. Co., 7 F. Supp. 3d 155, 161 (1st Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). In assessing a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. Id. This case was brought under the Court's diversity jurisdiction, and the parties agree that the substantive

law of the State of Rhode Island applies. See Rosciti v. Ins. Co. of Pa., 659 F.3d 92, 96 (1st Cir. 2011).

III. Discussion

    A.   Columbia's Motion for Summary Judgment

Columbia claims that it is entitled to judgment as a matter of law on Ironshore's bad faith counterclaims because: (1) Ironshore has not alleged breach-of-contract, a necessary prerequisite to establish a bad faith claim in Rhode Island; (2) Lifespan never validly assigned its interests in the Beauchamp case to Ironshore and, therefore, Ironshore has no standing to assert these counterclaims; and (3) even if there was a breach of contract and a valid assignment, Ironshore cannot prove bad faith because the undisputed facts demonstrate that Columbia acted in good faith throughout the handling and resolution of the Beauchamp action. See generally Pl.'s Mem.

As an initial matter, Ironshore has standing to bring its counterclaims. Judge Lisi previously recognized that Ironshore supported its right to pursue its statutory bad faith counterclaims under R.I. Gen. Laws § 9-1-33 based on "the subrogation provision in the policy issued to RIH." Mem. & Order 9-10. Specifically, she found that Ironshore had "submit[ed] a written assignment" and that Ironshore was "equitably subrogated to RIH's and/or Lifespan's rights of recovery by virtue of the $11 million payment Ironshore

6

made." Mem. & Order 9-10.[4] Accordingly, Columbia's contention that Lifespan never validly assigned its interests to Ironshore is without merit.[5]

1. Ironshore's bad-faith claims can proceed without an underlying breach-of-contract claim

Columbia argues that Ironshore cannot maintain any claim for bad faith without first proving that Columbia breached the underlying insurance contract with Lifespan. Pl.'s Mem. 13. According to Columbia, Ironshore cannot establish a breach-of-contract claim here because (1) the insurance contract issued to Lifespan endows Columbia with broad discretion to handle and settle claims as it "deems expedient" and Columbia acted within the limits

---

[4] The written assignment was executed on August 11, 2015, and specifically provides that Lifespan and RIH "hereby assign to Ironshore . . . all of the right, title and interest of Assignors . . . to any and all claims and causes of action that either or both of them now have, or ever had, against Columbia . . . in any way related to . . . the conduct of Columbia in the handling, oversight, direction, negotiation, and settlement of the case of Beauchamp . . ." Def.'s Mem. in Opp'n to Mot. Dismiss, Ex. C ("Assignment"), ECF No. 20-3.

[5] Subsequent to Judge Lisi's ruling on Columbia's Motion to Dismiss, a Lifespan representative testified that Lifespan got "nothing" in return for the assignment of its interests to Ironshore. See CSUF ¶ 129. Columbia argues that this proves the assignment was void for lack of consideration. Pl.'s Mem. 21-23. However, that representative prefaced his answer by explaining that it was "not my decision" to assign Lifespan's rights because "I'm a claims person. That would have been a corporate decision." CSUF, Ex. 47, 208:17-209:16, ECF No. 56-47. Accordingly, the layperson testimony that there was no consideration for the assignment carries little weight here and certainly does not render the assignment void.

7

of that discretion; and (2) Ironshore cannot point to any actual damages. Id. at 16-21.

The relevant part of the insurance contract provides:

> Where we have an obligation to investigate and defend an insured, we will do so even if the allegations of a "claim" are groundless, false, or fraudulent, but only until we make payment or offer to pay or deposit in court that part of judgment(s) not exceeding our limit of liability. <u>We shall also have the sole right to make settlement of a "claim" as we deem expedient.</u>

Id. at 16 (emphasis added); see also CSUF ¶ 5. Columbia notes that this Court and the Rhode Island Supreme Court have been virtually unequivocal that establishing a breach of contract is a necessary predicate for any bad faith claims, including insurer bad faith. See, e.g., N.Y. Ins. Co. v. Ortiz, No. C.A. 14–74 S, 2015 WL 5793701, at *3 n.4 (D.R.I. Sept. 30, 2015) (Smith, C.J.) ("Because New York Life is entitled to summary judgment on Ortiz's breach-of-contract claim, Ortiz's bad-faith claim [premised on R.I. Gen. Laws § 9-1-33] must fail.") Bartlett v. John Hancock Mut. Life Ins. Co., 538 A.2d 997, 1000 (R.I. 1988) ("[T]here can be no cause of action for an insurer's bad faith refusal to pay a claim until the insured first establishes that the insurer breached its duty under the contract of insurance."). But see Beacon Mut. Ins. Co. v. St. Paul Mercury Ins. Co., 7 F. Supp. 3d 155, 169 (D.R.I. Mar. 27, 2014) (McConnell, J.) (considering and rejecting the merits of a bad faith

8

claim under R.I. Gen. Laws § 9-1-33 even after granting summary judgment on the breach of contract claim).

In response, Ironshore maintains that it need not prove breach of contract because "[t]he way in which Columbia performed the contract elevated its interests over Lifespan's, thus triggering Columbia's bad faith liability." Def.'s Opp'n 41.

Here, both Magistrate Judge Almond and Judge Lisi previously found Ironshore's bad faith claims viable notwithstanding the fact that it never pleaded a claim for breach of contract. They did so by following the rationale discussed by the Eighth Circuit in West Am. Ins. Co. v. RLI Ins. Co., 698 F.3d 1069 (8th Cir. 2012). Specifically, the R. & R. states:

> Ironshore plainly alleges that Columbia utilized the high/low agreement to gamble with Ironshore's money, at the risk of injuring its insured's reputation and exhausting its final layer of insurance coverage, rather than diligently attempting to settle the Beauchamp case within its policy limit. Thus, I recommend that this Court follow West and find that Ironshore has adequately stated a bad faith claim against Columbia as the assignee/subrogee of the Hospital, their mutual insured.

R. & R. 8 (emphasis added). Magistrate Judge Almond further found that the Eighth Circuit's decision was "well-reasoned, persuasive and fully consistent with the policy rationale expressed by the Rhode Island Supreme Court in recognizing an insurer's duty of good faith to its insured." Id. Additionally, although she did not separately cite West, Judge Lisi adopted Magistrate Judge Almond's

9

R. & R. "in its entirety," and noted that "[i]t is well established Rhode Island law that 'an insurer has a fiduciary obligation to act in the best interests of its insured in order to protect the insured from excess liability' and to refrain from conduct that demonstrates 'greater concern for the insurer's monetary interest than the financial risk attendant to the insured's situation.'" Mem. & Order 6, 10 (quoting Skaling v. Aetna Ins. Co., 799 A.2d 997, 1005 (R.I. 2002).

Accordingly, the legal conclusion that Ironshore's bad faith claims are viable, even absent a claim for breach of contract, is the law of the case and binding on this Court. See id.; see also McConaghy v. Sequa Corp., 294 F. Supp. 2d 151, 160 (D.R.I. 2003) (holding that the law of the case doctrine "requires that legal decisions, or rulings of law, made by a court at a particular stage of a civil or criminal proceeding become 'law of the case,' and that thereafter these determinations govern the same issues in subsequent stages of the same litigation, unless corrected by appellate review"). Thus, Ironshore has stated a viable claim for insurer bad faith notwithstanding its failure to assert a claim for breach of contract.

> 2. Ironshore's bad-faith claims cannot be resolved on summary judgment

Columbia argues that Ironshore cannot prove bad faith because the undisputed facts show that Columbia acted in good faith throughout the Beauchamp settlement negotiations. Pl.'s Mem. 25.

Specifically, Columbia contends that Ironshore cannot meet its burden of proving that Columbia "intentionally failed to properly investigate the underlying claim, subject its investigation to review, or otherwise acted unreasonably." Id. According to Columbia, to prevail on a claim for insurer bad faith, Ironshore must prove that Columbia knew or recklessly disregarded the fact that there was no "reasonable basis for denying benefits of the policy." Id. at 24 (quoting Skaling, 799 A.2d at 1007). Columbia's actual knowledge may be inferred when its actions "demonstrate a reckless indifference to facts or to proofs submitted by the insured." Skaling, 799 A.2d at 1004.

Ironshore's counterclaims cannot be resolved on summary judgment. Section 9-1-33 specifically states that "the question of whether or not an insurer has acted in bad faith in refusing to settle a claim shall be a question to be determined by the trier of fact." R.I. Gen. Laws § 9-1-33. And in this case, the question is obviously one for the jury to resolve: it must determine if Columbia's gamble on the High-Low Agreement and its less than enthusiastic settlement efforts was in the interests of RIH, or if Columbia ignored RIH's reputational risk and used Ironshore's money to roll the dice in hopes of getting snake eyes. Ironshore's counterclaims for insurer bad faith will proceed to a jury.

B.  Ironshore's Motion to Preclude Expert Report of Judge Mark A. Pfeiffer

Ironshore argues that Judge Pfeiffer's report should be excluded because his opinions are: (1) irrelevant to the central question in the case, i.e., whether Columbia's conduct in investigating, defending, and settling the claims against RIH in the Beauchamp action were consistent with industry standards, customs, and practices; (2) cumulative of Columbia's other expert, Phil Sibilia, who is a qualified expert in the area of insurance standards, customs, and practices; (3) not based on any existing or recognized methodology but instead are based on made-up standards that he himself has devised through his settlement practices while a judge; (4) discuss matters about which he is not qualified to opine; and (5) unduly prejudicial because his judicial title will give the imprimatur of a Rhode Island jurist vouching for Columbia's conduct.  Def.'s Mot. to Preclude 1, ECF No. 61.

Judge Pfeiffer was retained to give an opinion as to "the actions of Columbia in its efforts to settle the Beauchamp action against RIH in view of the usual and customary settlement practices utilized in the Rhode Island Superior Court with respect to civil actions awaiting trial."  Id., Ex. A ("Pfeiffer Report") 2, ECF No. 61-2.  He states that he is qualified to render that opinion by virtue of his twenty-one years as a jurist in the Rhode Island Superior Court and his subsequent practice in alternative dispute resolution, through which he has mediated 40-50 matters awaiting

trial in Superior Court, the majority of which were civil actions. Id. at 3.

Rule 702 of the Federal Rules of Evidence provides that expert testimony is appropriate and admissible if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" and "the testimony is the product of reliable principles and methods" which the expert has "reliably applied" to the facts of the case. Fed. R. Evid. 702. Rule 403 provides that the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, the central issue is whether Columbia's settlement conduct amounted to "bad faith" given its role as an insurer with a heightened duty of care to look out for its insured. Therefore, it is irrelevant whether Columbia's behavior during settlement negotiations comported with the reasonable expectations of civil litigants generally, least of all because the average civil litigant is a party representing his own interests, not a fiduciary representing the interests of another. As such, Judge Pfeiffer's opinion is not likely to be helpful to the jury in assessing Ironshore's bad faith claims. Had Judge Pfeiffer cabined his opinion to address his experience with insurance contracts and

13

settlement negotiations of insurance claims specifically, or presented "standards of settlement practice" that were tailored to the unique fiduciary duties imposed upon insurance companies, his opinion may have had more relevance. Instead, in his deposition, Judge Pfeiffer admits that his opinion is not specific to the expectations imposed on insurance companies negotiating a settlement:

> Q: [T]hose superior Court practices that you referred to, are they unique to insurance companies or any civil matter pending in Rhode Island Superior Court?
>
> [Objection to form]
>
> A: The practices that I would be commenting on would be ones that would have general application to civil cases.

Def.'s Mot. to Preclude, Ex. F at 15:24-16:6, ECF No. 61-7. Moreover, Columbia never explains why a jury needs help understanding the "usual and customary settlement practices" in Rhode Island Superior Court (as compared with other jurisdictions or other settlement and negotiation situations). See Pfeiffer Report 2. Columbia's silence on this point is conspicuous given one of Ironshore's main arguments in support of its bad faith claims is that Columbia failed to give appropriate weight to the fact that Rhode Island, unlike other jurisdictions, has no "sustainable verdict" concept. See Def.'s Statement of Undisputed Facts, Ex. 12 at 1, ECF No. 69-12 ("Rhode Island does not have a process for evaluating sustainable verdicts and absent a showing that a verdict

14

amount shocks the conscience it is unlikely a jury verdict will be overturned by [the trial judge] initially, or subsequently by the Rhode Island Supreme Court.").

Judge Pfeiffer is indeed an experienced mediator and distinguished retired judge; and his experience as a jurist and a mediator could no doubt make him an excellent expert witness in the right case, but not this case. The present dispute turns on customary insurance practices and the fiduciary obligations an insurer owes to its insured during settlement negotiations. The testimony of Judge Pfeiffer — or any other judge opining about general civil settlement practices — must be precluded under Rules 401, 403, and 702. See Fed. R. Evid. 401, 403, 702.

IV. Conclusion

For the aforementioned reasons, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 55) and GRANTS Defendant's Motion to Preclude Expert Report of Judge Mark A. Pfeiffer (ECF No. 61).

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
Chief Judge
Date: May 20, 2019